IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ALEX IS THE BEST, LLC,<br><br>    Plaintiff,<br><br>v.<br><br>BLU PRODUCTS, INC.<br><br>    Defendant. | Civil Action No. 16-769-RGA |
| ALEX IS THE BEST, LLC,<br><br>    Plaintiff,<br><br>v.<br><br>HUAWEI DEVICE (DONGGUAN) CO. and HUAWEI DEVICE USA INC.,<br><br>    Defendants. | Civil Action No. 16-770-RGA |
| ALEX IS THE BEST, LLC,<br><br>    Plaintiff,<br><br>v.<br><br>LENOVO HOLDINGS COMPANY INC. and LENOVO (UNITED STATES) INC.,<br><br>    Defendants. | Civil Action No. 16-771-RGA |
| ALEX IS THE BEST, LLC,<br><br>    Plaintiff,<br><br>v.<br><br>TCT MOBILE INC., and TCT MOBILE (US) INC.,<br><br>    Defendants. | Civil Action No. 16-772-RGA |

## MEMORANDUM OPINION

Stephen B. Brauerman (argued), Sara E. Bussiere, BAYARD, P.A., Wilmington, DE.

    Attorneys for Plaintiff.

Dennis J. Butler, John D. Simmons, PANITCH SCHWARZE BELISARO & NADEL LLP, Wilmington, DE; Adam W. Poff, Robert M. Vrana, YOUNG CONAWAY STARGATT & TAYLOR LLP, Wilmington, DE; Jack B. Blumenfeld, Stephen J. Kraftschik, MORRIS, NICHOLS, ARSHT & TUNNEL LLP, Wilmington, DE; John C. Phillips, Jr., David A. Bilson, PHILLIPS GOLDMAN MCLAUGHLIN & HALL, P.A., Wilmington, DE; Chad S. C. Stover, BARNES & THORNBURG LLP, Wilmington, DE; Daniel P. Albers, BARNES & THORNBURG LLP, Chicago, IL; Todd G. Vare (argued), Jeffrey M. Barron, BARNES & THORNBURG LLP, Indianapolis, IN.

    Attorneys for Defendants.

November 3, 2017

**ANDREWS, U.S. DISTRICT JUDGE:**

Presently before me is the issue of claim construction of multiple terms in U.S. Patent No. 7,633,524 (the "'524 patent), U.S. Patent No. 7,907,172 (the "'172 patent"), U.S. Patent No. 8,134,600 (the "'600 patent"), U.S. Patent No. 8,477,197 (the "'197 patent"), U.S. Patent No. 8,581,991 (the "'991 patent"), U.S. Patent No. 8,947,542 (the "'542 patent"), and U.S. Patent No. 9,197,806 (the "'806 patent"). I have considered the parties' Joint Claim Construction Brief (D.I. 50)[1]. I held oral argument on November 1, 2017. (D.I. ___ ("Tr.")).

## I. LEGAL STANDARD

"It is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (internal quotation marks omitted). "'[T]here is no magic formula or catechism for conducting claim construction.' Instead, the court is free to attach the appropriate weight to appropriate sources 'in light of the statutes and policies that inform patent law.'" *SoftView LLC v. Apple Inc.*, 2013 WL 4758195, at *1 (D. Del. Sept. 4, 2013) (quoting *Phillips*, 415 F.3d at 1324) (alteration in original). When construing patent claims, a court considers the literal language of the claim, the patent specification, and the prosecution history. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 977–80 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996). Of these sources, "the specification is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." *Phillips*, 415 F.3d at 1315 (internal quotation marks omitted).

"[T]he words of a claim are generally given their ordinary and customary meaning. . . . [Which is] the meaning that the term would have to a person of ordinary skill in the art in

---

[1] Citations to "D.I. ___" are to the docket in C.A. No. 16-769 unless otherwise noted.

question at the time of the invention, i.e., as of the effective filing date of the patent application." *Id.* at 1312–13 (citations and internal quotation marks omitted). "[T]he ordinary meaning of a claim term is its meaning to [an] ordinary artisan after reading the entire patent." *Id.* at 1321 (internal quotation marks omitted). "In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Id.* at 1314.

When a court relies solely upon the intrinsic evidence—the patent claims, the specification, and the prosecution history—the court's construction is a determination of law. *See Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 841 (2015). The court may also make factual findings based upon consideration of extrinsic evidence, which "consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." *Phillips*, 415 F.3d at 1317–19. Extrinsic evidence may assist the court in understanding the underlying technology, the meaning of terms to one skilled in the art, and how the invention works. *Id.* Extrinsic evidence, however, is less reliable and less useful in claim construction than the patent and its prosecution history. *Id.*

"A claim construction is persuasive, not because it follows a certain rule, but because it defines terms in the context of the whole patent." *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998). It follows that "a claim interpretation that would exclude the inventor's device is rarely the correct interpretation." *Osram GMBH v. Int'l Trade Comm'n*, 505 F.3d 1351, 1358 (Fed. Cir. 2007) (citation omitted).

## II. BACKGROUND

The following claims are representative for the purposes of this Markman.

4

**Claim 1 of the '524 Patent**

> 1. An integrated Internet camera system, comprising:
>
>    a website archive and review center (WSARC) for storing and managing images;
>
>    an Internet direct camera (IDC) for capturing an image, automatically transmitting said image to an account associated with said IDC on said WSARC upon image capture and receiving stored image from said WSARC, and comprising a display for displaying said captured image and said received image; and
>
>    wherein said IDC automatically connects to said WSARC over an Internet connection on power-up using one of a plurality of available modes of connection, which is designated as a primary mode of communication, and wherein said IDC automatically switches to another mode of communication when said IDC detects that said primary mode of communication to said WSARC is unavailable.

(D.I. 49-1, Exh. 1 ("524 patent"), claim 1).

**Claim 1 of the '600 Patent**

> 1. An Internet direct device comprising an imaging system to capture still or video images; a microprocessor to transmit said captured still or video images to another Internet direct device upon image capture, and receive still or video images from said other Internet direct device over a communications network; and wherein the Internet direct device automatically connects to said communications network on power-up using one of a plurality of available modes of connection, which is designated as a primary mode of connection, and wherein the Internet direct device automatically switches to another available mode of connection when the Internet direct device detects that said primary mode of connection to said communications network is unavailable.

(D.I. 49-1, Exh. 3 ("'600 patent"), claim 1).

**Claims 1, 12, 13, and 22 of the '172 Patent**

> 1. An Internet direct device comprising an imaging system to capture a still or video image; and a microprocessor to transmit said captured still or video image to an account associated with the Internet direct device on a website archive and review center (WSARC) upon image capture, and receive still or video image from said WSARC; and wherein the Internet direct device automatically connects to said WSARC over an Internet connection on power-up using one of a plurality of available modes of connection, which is designated as a primary mode of

5

communication, and wherein the Internet direct device automatically switches to another available mode of communication when the Internet direct device detects that said primary mode of communication to said WSARC is unavailable.

12. The Internet direct device of claim 1, wherein said imaging system further comprises an image pickup, an optical module for forming an image on the image pickup, and an image capturing module for capturing digital still or video images from said image pickup.

13. The Internet direct device of claim 12, where said optical module comprises an auto-focus optical system.

22. The Internet direct device of claim 1, furthering comprising an image compression module for compressing said captured image.

(D.I. 49-1, Exh. 2 ("'172 patent"), claims 1, 12, 13, 22).

**Claims 1, 16, 17, and 19 of the '197 Patent**

1. An Internet direct device comprising an imaging system to capture still or video image; a microprocessor to transmit said captured still or video images to an account associated with the Internet direct device on a website archive and review (WSARC) upon image capture, and receive still or video images from said WSARC over a communications network; and wherein the Internet direct device automatically connects to said communications network on power-up using one of a plurality of available modes of connection, which is designated as a primary mode of connection, and wherein the Internet direct device automatically switches to another available mode of connection when the Internet direct device detects that said primary mode of connection to said communications network is unavailable.

16. The Internet direct device of claim 1, wherein said imaging system further comprises an image pickup, and an image capturing component for capturing digital still or video images from the image pickup.

17. The Internet direct device of claim 16, wherein said optical component comprises an auto-focus optical system

19. The Internet direct device of claim 1, further comprising an image compression component for compressing said captured still or video images.

(D.I. 49-1, Exh. 4 ("'197 patent"), claims 1, 16, 17, 19).

## III. TERMS FOR CONSTRUCTION

### 1. "Internet"

a. *Plaintiff's proposed construction*: No construction necessary. Plain meaning. Alternatively, the global system of linked computer networks that is typically associated with using TCP/IP as a standard protocol.

b. *Defendants' proposed construction*: The global information system that is logically linked by a globally unique IP address space using the Internet Protocol Suite (TCP/IP) or its subsequent extensions and follow-ons.

c. *Defendants' modified construction:* Defendants accept Plaintiff's proposed construction as "the global system of linked computer networks that is typically associated with using TCP/IP as a standard protocol."

d. *Court's construction*: The global system of linked computer networks that is typically associated with using TCP/IP as a standard protocol.

The parties agree that the term "Internet" means "the global system of linked computer networks that typically is associated with using TCP/IP as a standard protocol." (Tr. at 7). They dispute only whether I should construe the term. (*Id.*).

Plaintiff argues that there is no reason to construe the term, urging that "Internet" refers to "*the* Internet, [which] has a plain and commonly understood meaning to persons skilled in the art." (D.I. 50 at 8-9); *see O2 Micro Int'l, Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008) (holding that courts are "not (and should not be) required to construe every limitation present in a patent's asserted claims").

Defendants respond that although "Internet" "certainly has become ubiquitous in use, that does not mean its technical definition is so well known that a construction is unnecessary," pointing out that a jury should understand that the "'Internet' is not limited to the World Wide Web, but also includes other networks." (D.I. 50 at 11).

Given that Defendants agree with Plaintiff's alternative construction, I adopt that construction.

7

2. **"on power-up"**

    a. *Plaintiff's proposed construction*: No construction necessary. Plain meaning. Alternatively, when power is provided.

    b. *Plaintiff's modified construction*: Plaintiff accepts Defendants' proposed construction as "When the Internet Direct Camera (IDC) or Internet Direct Device (IDD) is turned on."

    c. *Defendants' proposed construction*: When the Internet Direct Camera (IDC) or Internet Direct Device (IDD) is turned on.

    d. *Court's construction*: When the Internet Direct Camera (IDC) or Internet Direct Device (IDD) is turned on.

The parties agree that the term "on power-up" means "When the Internet Direct Camera (IDC) or Internet Direct Device (IDD) is turned on." (Tr. at 7). They dispute only whether I should construe the term. (*Id.*).

Plaintiff contends that I need not construe the term. (D.I. 50 at 12). Specifically, Plaintiff argues that Defendants admit that "on power-up" has a plain and ordinary meaning of "to turn something on," and that Defendants do not identify any reason why I need to construe a term that has an agreed-upon plain and ordinary meaning. (*Id.* at 18).

Defendants counter that Plaintiff's claim language and specification expressly recite "actions that occur 'on power-up' of the Internet Direct Camera or Internet Direct Device." (*Id.*).

Given that Plaintiff agrees that "on power-up" refers to the Internet Direct Camera and Internet Direct Device, I adopt Defendants' proposed construction. (*Id.*).

3. **"automatically"**

    a. *Plaintiff's proposed construction*: No construction necessary. Plain meaning.

    b. *Defendants' proposed construction*: Without human intervention.

    c. *Court's construction*: No construction necessary. Plain meaning.

8

"Automatically" appears in the claims in several contexts. Claim 1 of the '524 patent requires an Internet Direct Camera for capturing an image and then "*automatically* transmitting said image to" the WSARC "upon image capture." ('524 patent, claim 1). Additionally, all of the asserted claims require that the Internet Direct Camera or Internet Direct Device "*automatically* connects" to the WSARC, the Internet, or other communication network "on power-up" using one of a plurality of available modes of connection designated at the "primary mode of connection," and "*automatically* switches to another available mode of connection" when the primary mode is unavailable. (D.I. 50 at 21).

As discussed in oral argument, the parties do not disagree as to the amount of human intervention permitted. (Tr. at 12). I do not think the jury needs a construction of "automatically" to understand what it means in the context of the claims. Thus, I adopt a plain meaning construction.

### 4. "primary mode of communication" or "primary mode of connection"

a. *Plaintiff's proposed construction*: No construction necessary. Plain meaning. Alternatively, the mode of communication/connection that is designated as primary.

b. *Defendants' proposed construction*: Among a plurality of available modes of communication, the mode of communication that the user has designated will be first used by the device on power up.

c. *Court's construction*: The mode of communication/connection that is designated as the first to be used by the device.

The parties do not disagree as to the meaning of the term. They agree that the "primary mode of communication" or "connection" is the first to be used when the device is turned on, and that "somebody" must at some time designate a "primary mode of communication" or "connection." Accordingly, as discussed in oral argument, I adopt a construction that reflects this agreement. (Tr. at 20).

9

### 5. "another available mode of communication" or "another available mode of connection"

   a. *Plaintiff's proposed construction*: No construction necessary. Plain meaning. Alternatively, the mode of communication that is used by the device when the primary mode of connection is unavailable.

   b. *Defendants' proposed construction*: Among a plurality of available modes of communication, the mode of communication that is used by the device only when the primary mode of connection in unavailable.

   c. *Court's construction*: The mode of communication that is used by the device [to practice the claims] only when the primary mode of connection in unavailable.

The parties' sole disagreement is whether the construction should include the word "only." The parties agree that, pursuant to my construction for the "primary mode of communication" or "connection," the device must first use the "primary mode of communication" or "connection" to perform the tasks identified in the patents, including "connecting" to the WSARC or to the "communications network." (Tr. at 32-33). They further agree that only when this "primary mode of communication" or "connection" is unavailable does the device "automatically switch[]" to "another" mode of communication or connection to perform these tasks. (Tr. at 46).

Plaintiff expresses concern that including "only" in the construction would improperly read out of the claims a situation where the device simultaneously uses two modes of connection. (Tr. at 21-22). As is reflected in the parties' agreement, Plaintiff concedes that in such a situation where the device uses two modes of connection simultaneously, the primary mode of connection (if available) would first perform the tasks identified in the patents and would do so exclusively. (Tr. at 33). But Plaintiff avers that the secondary mode of connection could be used to perform tasks other than those identified in the patents. (Tr. at 46-47). To support its contention, Plaintiff states that nothing in the claim language limits the device to a single connection. (Tr. at 44).

10

Defendants respond by pointing to the prosecution history, where Plaintiff added the claim language at issue and explained that prior art did not "teach[] or suggest[] . . . operating the IDC using another mode of communication when the primary mode of communication becomes unavailable." (Tr. at 24-26, 37-38; D.I. 49-1, Exh. 11 at 8).

Indeed, as Defendants point out, the patents and prosecution history specify that the device itself, as opposed to a particular application on the device, must connect to the WSARC or to the communications network. (Tr. at 42). The prosecution history also teaches "operating the IDC using another mode of communication when the primary mode of communication becomes unavailable." (D.I. 49-1, Exh. 11 at 8). But these facts are consistent with the parties' agreement detailed above; with the claim language, which ties the "modes of communication" or "connection" to the specific tasks identified in the patent; and with Plaintiff's concern about reading out the use of "modes of communication" or "connection" for purposes beyond the patents' tasks of "connecting" to the WSARC or to the "communications network."

Accordingly, I do not think either proposed construction captures the proper claim scope. I adopt a construction that comports with both parties' understanding of the term: "The mode of communication that is used by the device [to practice the claims] only when the primary mode of connection in unavailable." I have put "to practice the claims" in brackets because it, or its equivalent, "to practice the tasks identified in the patents," would be confusing to a jury. I request that the parties meet-and-confer for the purpose of identifying a non-confusing construction that would better describe the meaning of the term.

6. **"optical module" or "optical component" and "auto-focus optical system"**

   a. *Plaintiff's proposed construction*: Not subject to § 112, ¶ 6. No construction necessary. Plain meaning.

11

b. *Plaintiff's alternative proposed construction for "optical module" and "optical component":*

Function: Forming an image on the image pickup. ('172 Patent, at 2:37-42; '197 Patent, at 2:45-50; '806 Patent, at 2:51-56).

Structure: A zoom lens housed within a camera body. ('172 Patent, at 4:4-10; 6:24-34; '197 Patent, at 4:10-16, 6:30-40; '806 Patent, at 5:42-60, 8:11-21).

c. *Plaintiff's alternative proposed construction for "auto-focus optical system":*

Function: Automatically focusing an image to be captured on the image pickup. ('172 Patent, at 2:37-42, 4:9-10; '197 Patent, at 2:45-50, 4:15-16; '806 Patent, at 2:51-56, 5:47-50).

Structure: Electrical, mechanical, and optical components controlled by the microprocessor. ('172 Patent, at 4:4-10, 7:60-67; '197 Patent, at 4:10-16, 7:66-8:6; '806 Patent, at 5:42-60, 10:16-23).

d. *Defendants' proposed construction:*

Subject to § 112, ¶ 6.

For "optical module/component," the function is performing an image capture, pickup, and processing."

For "auto-focus optical system," the function is performing an image focus, capture, pickup, and processing.

These claims are indefinite, however, because the specification fails to disclose adequate corresponding structure for performing the claimed functions, including but not limited an algorithm that may be used by a general-purpose computing device.

e. *Court's construction:* Not subject to § 112, ¶ 6. No construction necessary. Plain meaning.

The absence of "means" in the claim language creates a rebuttable presumption that § 112, ¶ 6 does not apply. *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1348-49 (Fed. Cir. 2015).

To overcome this presumption, Defendants must "demonstrate[] that the claim term fails to 'recite sufficiently definite structure' or else recites 'function without reciting sufficient

structure for performing that function.'" *Id.* at 1349 (quoting *Watts v. XL Sys., Inc.*, 232 F.3d 877, 880 (Fed. Cir. 2000)). "Sufficient structure" exists where "the words of the claim are understood by persons of ordinary skill in the art to have sufficiently definite meaning as the name for structure." *Id.* at 1349 (citing *Greenberg v. Ethicon Endo-Surgery, Inc.*, 91 F.3d 1580, 1583 (Fed. Cir. 1996)). If the claim term fails to recite sufficiently definite structure, § 112, ¶ 6 will govern construction of the claim in spite of the absence of "means" language.

Plaintiff argues that Defendants have not carried their burden to rebut the presumption that these terms, which do not use the word "means," are not subject to construction under 35 U.S.C. § 112, ¶ 6. Specifically, Plaintiff avers that an "optical module," "optical component," and "auto-focus optical system" are each a "structural component of standard digital photography equipment." (D.I. 50 at 40). To support its contention, Plaintiff cites several pieces of extrinsic evidence. *See* Cambridge in Color, *Understanding Camera Autofocus*, http://www.cambridgeincolour.com/tutorials/camera-autofocus.htm (last visited November 1, 2017); Stacy Taylor, *Parts of a Digital Camera*, http://photography.lovetoknow.com/Parts_of_a_Digital_Camera (lasted visited November 1, 2017); U.S. Patent No. 8,610,823; U.S. Patent No. 7,142,368; U.S. Patent No. 8,580,600.

Indeed, nonce words such as "mechanism," "element," and "device," which reflect nothing more than verbal constructs, "typically do not connote sufficiently definite structure," and therefore may invoke § 112, ¶ 6. *Williamson*, 729 F.3d at 1350. Furthermore, it is true that the term "module" is one such "well-known nonce word that can operate as a substitute for 'means' in the context § 112, ¶ 6." *Id.*

But the mere presence of a word like "module" or "component" does not necessarily mean that a claim is governed by § 112, ¶ 6. An adjective, for example, can give sufficient

13

structure to a word like "module" or "component." Defendants offer that the modifying adjective here, "optical," might refer to "eyeglasses" or a "telescope." (Tr. at 55). Therefore, they say, it fails to meaningfully modify "module" and "component" such that the terms provide sufficient structure. (Tr. at 54-55). However, given the context of the claims and the extrinsic materials cited by Plaintiff, a person of ordinary skill in the art would understand the terms to have sufficiently definite meaning related to digital photography equipment.

Accordingly, I find that Defendants have failed to overcome the rebuttable presumption of *Williamson*. "Optical module," "optical component," and "auto-focus optical system" are not governed by § 112, ¶ 6. I adopt a plain meaning construction.

### 7. "image compression module" or "image compression component"

a. *Plaintiff's proposed construction*: Not subject to § 112, ¶ 6. No construction necessary. Plain meaning.

b. *Plaintiff's alternative proposed construction:*

Function: Performing image compression. ('172 Patent, at 3:59-64; '197 Patent, at 3:65-4:3).

Structure: One or more hardware-based encoders for image compression in accordance with at least the known standards of JPEG, TIFF, and/or GIFF as controlled by the device's microcontroller. ('172 Patent, at 3:47-4:3, Fig. 2 and element 2210; '197 Patent, at 3:54-4:9, Fig. 2 and element 2210).

c. *Defendants' proposed construction*:

Subject to § 112, ¶ 6

The function is performing image compression, *e.g.*, JPEG, Huffman, Wavelet and the like, for storage in the storage device 2400 and/or transmission to the WSARC 3000.

These claims are indefinite, however, because the specification fails to disclose adequate corresponding structure for performing the claimed functions, including but not limited an algorithm that may be used by a general-purpose computing device.

d. *Court's construction*: Not subject to § 112, ¶ 6. No construction necessary. Plain meaning.

14

Just as a person of ordinary skill in the art would understand the terms "optical component," "optical module," and "auto-focus optical system" to have sufficiently definite meaning related to digital photography equipment, a personal of ordinary skill in the art would understand "image compression module" and "image compression component" to have sufficiently definite meaning. *See* Lifeware, *Understanding Compression in Digital Photography*, https://www.lifewire.com/the-effect-of-compression-of-photographs-493726 (last visited November 1, 2017); U.S. Patent No. 6,903,676.

Accordingly, I find that Defendants have failed to overcome the rebuttable presumption of *Williamson*. "Image compression module" and "image compression component" are not governed by § 112, ¶ 6, and I adopt a plain meaning construction.

### 8. "image capturing module" or "image capturing component"

a. *Plaintiff's proposed construction*: Not subject to § 112, ¶ 6. No construction necessary. Plain meaning.

b. *Plaintiff's alternative proposed construction:*

Function: Capturing digital images from the image pickup. ('172 Patent, at 2:37-51, 4:11-19 and Cl. 12; '197 Patent, at 2:45-59, 4:17-25 and Cl. 16; '806 Patent, at 2:51-65, 5:61-6:2 and Cl. 6).

Structure: Storage device in IDC that captures images as digital image files. ('172 Patent, at 3:47-4:3, 4:11-19 and Fig. 2; '197 Patent, at 3:54-4:9, 4:17-25 and Fig. 2; '806 Patent, at 5:19-41, 5:61-6:2 and Fig. 2).

c. *Defendants' proposed construction*:

Subject to § 112, ¶ 6.

The function is performing an image capture and pickup.

These claims are indefinite, however, because the specification fails to disclose adequate corresponding structure for performing the claimed functions, including but not limited an algorithm that may be used by a general-purpose computing device.

15

d. *Court's construction*: Not subject to § 112, ¶ 6. No construction necessary. Plain meaning.

Again, just as a person of ordinary skill in the art would understand the prior "module" and "component" terms to have sufficiently definite meaning related to digital photography equipment, a personal of ordinary skill in the art would understand "image capturing module" and "image capturing component" to have sufficiently definite meaning. Stacy Taylor, *Parts of a Digital Camera,* http://photography.lovetoknow.com/Parts_of_a_Digital_Camera (last visited November 1, 2017); Historic England, *Digital Image Capture and File Storage*, https://content.historicengland.org.uk/images-books/publications/digital-image-capture-and-file-storage/heag059-digital-images.pdf/ (last visited November 1, 2017).

Accordingly, I find that Defendants have failed to overcome the rebuttable presumption of *Williamson*. "Image capturing module" and "image capturing component" are not governed by § 112, ¶ 6, and I adopt a plain meaning construction.

## IV. CONCLUSION

Within fifteen days the parties shall submit a proposed order consistent with this Memorandum Opinion.